# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
## June 21, 2001 Session

## BETTY FAYE VESTAL v. THOMAS WAYNE LAWLER, ET AL.

**A Direct Appeal from the Circuit Court for Gibson County**
**No. H 3215     The Honorable Clayburn Peeples, Judge**

---

### No. W2001-00013-COA-R3-CV - Filed August 10, 2001

---

Buyer, under warranty deed, sued seller for breach of warranty against encumbrances after receiving notice of trustee's sale pursuant to deed of trust encumbering the property. Seller answered the complaint and filed a third party complaint against the lawyer he retained to perform a title search, which search failed to show the deed of trust. The third party defendant filed a counter complaint against the seller. The trial court granted the buyer judgment on the pleadings against seller, dismissed seller's third party complaint, and granted third party defendant summary judgment against seller. Seller appeals. We reverse in part and modify in part.

### Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed in Part, Affirmed as Modified

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and ROBERT L. CHILDERS, SP.J., joined.

Harold R. Gunn, Humboldt, For Appellant, Thomas Wayne Lawler

James L. Kirby; Michelle M. Drake, Memphis, For Appellee, Kyle Atkins
Marty R. Phillips, Jackson, For Appellee, Betty Faye Vestal

### OPINION

Plaintiff, Betty Faye Vestal (Vestal), buyer of real property, sued defendant, Thomas Wayne Lawler (Lawler), the seller of the property, for breach of warranty against encumbrances. Lawler answered the complaint and filed a third party complaint against Kyle Atkins[1] (Atkins), the title examiner he retained to examine the title to the property. Atkins filed an answer to the third party complaint and filed a counter complaint against Lawler.

---

[1] Lawler also filed a third party complaint against Kelly Frazier, which is still pending in the trial court. The judgments involved in this appeal were made final by the trial court pursuant Tenn.R.Civ.P. 54.02.

The material facts are undisputed and are taken from the various pleadings filed by the parties. Arline D. Mathis, owned the subject real property located in Humboldt, Tennessee. In September of 1997, Ms. Mathis executed a General Power of Attorney designating Kelly Dale Frazier as her attorney-in-fact with the authority to mortgage and encumber Ms. Mathis's real property. On November 10, 1997, Kelly Frazier obtained a mortgage loan on behalf of Arline D. Mathis from Reliance Mortgage & Realty Company ("Reliance"). In securing the loan, Frazier executed a Deed of Trust in favor of Reliance encumbering subject property, which was recorded in the Register's Office of Gibson County, Tennessee.[2]

After the Deed of Trust was recorded against the property, Arline D. Mathis died in February, 1998, and her son, Thomas Wayne Lawler inherited the property. Mr. Lawler retained Kyle Atkins to conduct a title search on the property. The title search did not reveal the encumbrance of the Deed of Trust. In April of 1998, Mr. Lawler sold the property to Betty Faye Vestal for $26,000.00 and conveyed by Warranty Deed duly recorded in the Register's Office of Gibson County. On July 7, 1998, Ms. Vestal received a Notice of Trustee's Sale for the subject property due to the default in the payment of the note secured by the Deed of Trust.

On November, 3 1999, Ms. Vestal filed a complaint in the Circuit Court of Gibson County against Thomas Wayne Lawler alleging breach of Warranty Deed because of the Reliance deed of trust and seeking damages in the amount of $28, 455.90, the amount of the lien encumbering the property. On February 3, 2000, Ms. Vestal filed a motion for judgment on the pleadings. On February 15, 2000, Lawler filed a third-party complaint against Kyle Atkins alleging he hired Mr. Atkins to search the title on the subject property, and Atkins assured him that there were no liens encumbering the property. Lawler averred that he first learned of the lien on the property after it was sold to Vestal when he received a letter from her attorney. Lawler requested judgment against Atkins for all sums that may be adjudged against Lawler in favor of Vestal. Atkins answered averring that the property was encumbered by a mortgage at the time that Lawler inherited it, and further that Atkins did not create or cause the mortgage and is therefore not responsible for paying it. Atkins asserted that Lawler was not damaged by the title search, but that the property was diminished in value by the mortgage placed on it before Lawler inheriting the property. Therefore, Atkins asserted, he was not the proximate cause of any damages alleged by Lawler. In addition, Atkins filed a counter complaint against Lawler averring that Lawler inherited the property encumbered by a mortgage in favor of Reliance and therefore it was Lawler's obligation to pay the mortgage. Atkins asserted that whether he or Vestal paid the debt, Lawler ultimately was responsible for paying the mortgage. Atkins also asserted that to the extent he incurs any damages, losses and expenses related to the mortgage and the payment thereof, he is entitled to indemnity, and further that he would be subrogated to all rights of the mortgage holder against Lawler or all rights of Vestal against Lawler. On August 30, 2000, Atkins filed a motion for summary judgment on the grounds that having paid Reliance through American National Lawyers Insurance Reciprocal, he was subrogated to Vestal's right to recover the amount of the mortgage from Lawler.

---

[2] Reliance sold the mortgage to ContiWest Corporation but repurchased it after default.

On December 19, 2000, the trial court entered an order granting Atkins's motion for summary judgment, granting Vestal's motion for a judgement on the pleadings and dismissing Lawler's third-party complaint. The order stated in pertinent part:

> [W]hen Lawler inherited the Property it was encumbered by Reliance's Deed of Trust; that after Lawler inherited the Property, he retained the third-party defendant/counter-plaintiff Atkins to conduct a title search on the Property and his title search did not reveal the encumbrance of Reliance's Deed of Trust; that Lawler in April, 1998 sold and transferred the property to the plaintiff Vestal by warranty deed recorded in Book 541, Page 7 in the Register's Office of Gibson County and this deed warranted that there were no encumbrances against the Property; that Reliance in July 1998 sent a Notice of Trustee's Sale to Vestal, who then made a claim against Kyle Atkins because the title search had not revealed the encumbrance of Reliance's Deed of Trust; that Atkins through his insurer American National Lawyers Insurance Reciprocal (ANLIR), for the benefit of Vestal, then paid Reliance for the mortgage indebtedness and Reliance assigned the mortgage note and the Deed of Trust to ANLIR; that the amount of the mortgage indebtedness owed to Reliance when Lawler sold the Property to Vestal was $28,455.90, as shown by the record and as acknowledged by the parties during the hearing, and this is the amount which Atkins through his insurer ANLIR paid to Reliance.
>
> The Court further finds that Vestal filed the original Complaint against Lawler to recover from Lawler the amount of the Reliance lien that encumbered the Property when Vestal purchased it; that Vestal had the right to recover the amount of the lien from Lawler; that Atkins became subrogated to Vestal's right to recover the amount of the Reliance lien from Lawler; that Lawler is ultimately responsible for the Reliance lien (Deed of Trust) because the lien was against the Property when Lawler inherited it; and that Lawler is not entitled to a windfall or an unjust enrichment because the Deed of Trust was not revealed by Atkins' title search.
>
> *          *          *
>
> IT IS THEREFORE ORDERED that the plaintiff Vestal's motion for a judgment on the pleadings is granted; that the third-party defendant/counter plaintiff Atkins' motion for summary judgment is granted; that a judgment in the amount of $28,455.90 is hereby entered against Lawler in favor of the plaintiff Vestal and the counter-

plaintiff Atkins (since Atkins is subrogated to the rights of Vestal against Lawler, Vestal and Atkins together are asserting one claim against Lawler for $28,455.90 and so the judgment is awarded to Vestal and Atkins jointly), and that the third-party complaint filed by Lawler against Atkins is dismissed on the merits and with prejudice.

Lawler has appealed, presenting two issues for review as stated in his brief as follows:

> Issue One : Can the insurance company of Atkins obtain subrogation from Vestal when the insurance company paid Vestal for Atkins's error in searching a title requested by and paid for by Appellant?
>
> Issue Two: Does Atkins owe Lawler for loss suffered by Atkins's negligence in a title search ordered by and paid for by Lawler?

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Since there are no disputed material facts, this case is appropriate for summary judgment. We must decide whether Atkins is entitled to summary judgment as a matter of law.

In granting summary judgment in favor of Atkins against Lawler, the trial court relied on the Supreme Court's decision in *Castleman Const. Co. v. Pennington*, 222 Tenn. 82, 432 S.W.2d 669 (1968). In that case, Castleman purchased 20 lots in a subdivision from the defendants Pennington and Cobert, co-owners and tenants in common. As part of the consideration, the defendants agreed that they would give to Castleman "a title policy in the usual form, issued by Attorneys Title Company," and this policy was duly delivered to Castleman. After the conveyance, it was discovered that there were encumbrances on some of the lots and the title company made the necessary payments to discharge the liens. The title company alleged that it was subrogated to the rights of Castleman against the defendants for the amounts so paid. The proof showed that one of the co-tenants had placed the encumbrance on the property, and this was unknown to the other co-tenant when the deed was signed. The Supreme Court held that the title company was entitled to subrogation from both the innocent co-tenant and the co-tenant who had placed the lien on the property, even though the title company was negligent in failing to discover and disclose the encumbrance prior to the conveyance to Castleman.

Lawler asserts that *Castleman* is distinguishable from the instant case on its facts because, he argues, that in *Castleman* the title company contracted with the purchaser of the property but not with the seller. That is not entirely correct, because the opinion states that the seller paid for and furnished to Castleman the title policy. Lawler argues that Atkins in the instant case owed a duty to Lawler and that Vestal has no claim against Atkins; thus, there is no right of subrogation against

Lawler. Lawler also asserts that he has a claim against Atkins for his negligent performance of the title search and that Atkins owes him damages in the amount of the lien.

We will consider the issues together. As to Atkins's subrogation claim against Lawler, we find that the trial court correctly relied on *Castleman*. In *Castleman*, the co-tenant that was unaware of the encumbrances at the time of the conveyance asserted that the title company's negligence in making the title search prevented recovery. The Court, in considering the doctrine of subrogation, said:

> It is thus essential that we first consider the nature of the doctrine of subrogation. In 83 C.J.S. Subrogation § § 1 and 2, the following statements are found:
>
>> Subrogation may be defined as the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. ***
>>
>> Subrogation does not owe its origin to statute or custom; nor is it a doctrine of the common law. It originated in equity and is a creature of equity, a doctrine of equity jurisprudence which was adopted by equity from the Roman or the civil law. ***
>>
>> Subrogation is founded on principles of justice and equity, and its operation is governed by principles of equity. It rests on the principle that substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form.
>
> The following is found in Couch on Insurance 2d, Subrogation, § 61:18:
>
>> *** Stated simply, subrogation is a creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience should pay it.
>
> And in § 61:20 of the same annotation it is stated:
>
>> The doctrine of subrogation in insurance does not arise from, nor is it dependent upon, statute or

custom or any of the terms of the contract; it has its origin in general principles of equity and in the nature of the insurance contract as one of indemnity. The right of subrogation rests not upon a contract, but upon the principles of natural justice.

The principle of subrogation will be applied or not, according to the dictates of equity and good conscience, and to considerations of public policy, resting, as it does, upon the maxim that no one should be enriched by another's loss. In fact, subrogation is not a matter of strict right, nor does it necessarily rest on a contract, but is purely equitable in its nature, and will not be enforced when it would work injustice to the rights of those having equal equities.

It is further stated in § 16:21:

To entitle one to subrogation, his equity must be strong and his case clear, since it will not be enforced where the equities are equal, or the rights are not clear, or where it will prejudice the legal or equitable rights of others. Where equities are equal, there is no right to subrogation. However, subrogation will not be enforced against superior equities.

432 S.W.2d at 674-75.

Lawler does not dispute that Vestal is properly entitled to a payment to discharge the Reliance lien. Atkins, through his insurance carrier, paid the amount to release the lien and seeks to be subrogated to Vestal's claim. As in ***Castleman***, we reach the conclusion that in balancing the equities between Lawler and Atkins, the equities are in favor of Atkins, and he is entitled to proceed as subrogee against Lawler. The trial court awarded Atkins judgment of $28,455.00 against Lawler and dismissed Lawler's complaint against Atkins. However, we note that the lien payment was $28,455.00 and the consideration for Lawler's sale to Vestal was $26,000.00. It is undisputed that Lawler inherited the real estate with the encumbrance, but there is nothing in the record to indicate that Lawler had any personal liability to pay the indebtedness. Therefore, if Lawler had known that the balance of the indebtedness secured by the deed of trust exceeded the value of the property, he could have simply walked away and allowed Reliance to foreclose on its deed of trust. While Lawler is responsible to Vestal for satisfying the lien on the property, he is not personally responsible for the debt. Therefore, if, because of any actions on the part of Atkins, he was obligated to pay more than the sale price of the property, he could have a valid claim against Atkins for any damages incurred. Under these circumstances, the trial court erred in dismissing Lawler's complaint against

Atkins. Since the lien payment was $28,455.00, and the consideration for Lawler's sale to Vestal was $26,000.00, the record establishes damages for Lawler against Atkins in the amount of $2,455.00.

Accordingly, we reverse the trial court's order dismissing Lawler's third-party complaint and award judgment for Lawler against Atkins for $2,455.00 to be credited on Atkins's judgment against Lawler, which we affirm as modified by the credit. Costs of the appeal are assessed one-half to appellant, Thomas Wayne Lawler and his surety, and one-half to Kyle Atkins. The case is remanded to the trial court for such further proceedings as may be necessary, including the release of the lien on Vestal's property, if this has not been done.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.